John B. GAINER, Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.

No. 88–7502.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1989.

Decided Jan. 4, 1990.

Gary R. Allen, Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellant.

Kevin C. Kellow, Pachter & Schaffer, Los Angeles, Cal., for petitioner-appellee.

Before HUG, CANBY and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The Commissioner of Internal Revenue (Commissioner) appeals from the Tax Court's decision sustaining the income tax deficiency against John B. Gainer (Gainer) but declining to impose an addition to tax pursuant to section 6659 of the Internal Revenue Code. 26 U.S.C. § 6659(a).[1] We affirm.

## BACKGROUND

The facts are not in dispute. Sometime in late 1981, Gainer purchased a ten percent limited partnership interest in a Food-Source refrigerated controlled atmosphere shipping container from FoodSource Sales Corporation. The total price of the container was $260,000. Gainer paid $26,000 for his interest in the container, $4,500 by check and the balance by executing a promissory note.

The container was designed to preserve perishable agricultural products during shipment. The fair market value of the container was stipulated to be between $52,000 and $60,000, a fraction of the purported selling price. The valuation was based upon an earlier decision of the Tax Court in a related case, *Noonan v. Commissioner*, 52 T.C.M. (CCH) 534 (1986), *aff'd*, *Todd v. Commissioner*, 862 F.2d 540 (5th Cir.1988).[2]

For the 1981 tax year, Gainer claimed a depreciation deduction and investment tax credit based upon his $26,000 purchase price. Gainer's 1981 deductions and credits were disallowed, however, because the container was not placed in service in 1981. In addition, Gainer's basis in the container was limited to his $4,500 cash investment because of the overvaluation of his interest, and because the promissory note was

non-recourse so that he was not at risk. All issues were settled prior to the Tax Court proceeding, save one: whether Gainer was liable for an addition to tax attributable to a valuation overstatement under section 6659.

The Tax Court refused to allow the section 6659 addition to tax. It reasoned that Gainer's deductions and credits were disallowed because the container had not been placed in service for the 1981 tax year. Therefore, Gainer was not entitled to *any* deduction or credit for that year, regardless of any overstatement of value. Because the underpayments were not "attributable to" any overstatement of value, the Tax Court refused to impose the section 6659 penalty. The Commissioner now asks us to reverse the Tax Court's decision.

## DISCUSSION

The interpretation of a statute is a question of law which we review de novo. *See, e.g., Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1447 (9th Cir.1989).

The statute at issue here, section 6659, provides in part:

(a) Addition to the tax

If—

(1) an individual, or

(2) a closely held corporation or a personal service corporation, has an underpayment of the tax imposed by chapter 1 for the taxable year which is attributable to a valuation overstatement, then there shall be added to the tax an amount equal to the applicable percentage of the underpayment so attributable.

26 U.S.C. § 6659(a).

The controversy focuses upon the phrase "is attributable to." The Commissioner makes several arguments in support of his contention that the section 6659 penalty should apply. He argues that the intent of Congress, as demonstrated by the plain meaning of "attributable" and the legisla-

---

1. Except where otherwise noted, all statutory references herein are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, 1981.

2. FoodSource investments have been the subject of much tax-related litigation. *See, e.g., Rybak v. Commissioner*, 91 T.C. 524 (1989); *Brand v. Commissioner*, 55 T.C.M. (CCH) 761 (1988).

tive history of section 6659, suggests a broad reading of the phrase and not one of sole causation. The Commissioner contends that a narrow interpretation of section 6659 would produce anomalous and inequitable results for taxpayers and force the Commissioner to choose between section 6659 and other possible penalties. The identical arguments in the same factual context were presented and addressed in *Todd v. Commissioner*, 862 F.2d 540, 542–45 (5th Cir.1988). We agree with the reasoning employed by the Fifth Circuit in *Todd*.

We may initially look to the plain meaning of the language of a statute in order to ascertain Congress' intent. *See Richards v. United States*, 369 U.S. 1, 9–10, 82 S.Ct. 585, 590–91, 7 L.Ed.2d 492 (1962). As indicative of Congress' intent, the Commissioner points to a dictionary definition of the word "attributable" as "capable of being attributed," *Webster's Third New International Dictionary* 141 (1976), and argues that there is no requirement that over-valuation be the sole cause of any underpayment. The Commissioner cites no other authority to support this proposition.[3] This tautological definition, however, provides us with no further explanation of "attributable," but instead casts another ambiguity into our search. *See Todd*, 862 F.2d at 542. Our inquiry would then turn on "capable" as well as "attributable." *Id.* We note that "attribute" and "attributable" are subject to as many varying definitions as there are dictionaries. *See, e.g., The Random House College Dictionary* 88 (1st ed. rev. 1980); *Webster's New Dictionary of Synonyms* 76 (1978); *Webster's Third New International Dictionary* 141–142 (1976); *The American Heritage Dictionary of the English Language* 85–86

(1970). For example, "attribute" is defined, *inter alia,* by The Random House College Dictionary as "to regard as resulting from; consider as caused by." Because of these ambiguities, we look to the legislative history. *Todd,* 862 F.2d at 542.

Congress' intent in enacting section 6659 and adding the overvaluation penalty was to discourage taxpayers from significantly overvaluing property on their tax returns in order to reduce their tax liability. *See Todd,* 862 F.2d at 542 (citing H.R.Rep. No. 201, 97th Cong., 1st Sess. 243 (1981) *reprinted in* 1981–2 C.B. 352, 398). The formal legislative history, however, does not discuss how to determine whether a tax underpayment is "attributable to" an overvaluation of property.

The *General Explanation of the Economic Recovery Tax Act of 1981,* prepared by the staff of the Joint Committee on Taxation, does contain such a formula.

> The portion of a tax underpayment that is attributable to a valuation overstatement will be determined *after taking into account any other proper adjustments to tax liability.* Thus, the underpayment resulting from a valuation overstatement will be determined by comparing the taxpayer's (1) actual tax liability (i.e., the tax liability that results from a proper valuation and which takes into account any other proper adjustments) with (2) actual tax liability as reduced by taking into account the valuation overstatement. The difference between these two amounts will be the underpayment that is attributable to the valuation overstatement.

Staff of the Joint Committee on Taxation, *General Explanation of the Economic Re-*

---

**3.** The Commissioner also argues that if Congress had intended the result obtained in the Tax Court, it would have used the phrase "solely attributed." We cannot agree. In the first place, "solely" is a misleading adverb in this context. It implies that the overvaluation was one of two causes of the deficiency and that the Tax Court held that insufficient. The Tax Court, however, first disallowed the entire deduction because the container had not been placed in service. The overvaluation was accordingly not even a *partial* cause of the deficiency. The fact

that it could have been a cause (partial or sole) had the Tax Court been free to proceed differently, is not sufficient.

In the second place, Code sections using the identical "attributable to" language have employed it synonymously with "due to"—a phrase which even more strongly suggests actual, rather than potential or alternative, causation. *See Todd,* 862 F.2d at 542 n. 5. (comparing IRC § 6653(b)(1) ("due to fraud") with IRC § 6653(a)(2), (b)(1)(A), (b)(2) ("attributable to fraud")).

*covery Tax Act of 1981*, 333 (Comm.Print 1981) (emphasis added) [hereinafter *General Explanation* ].

If we follow this formula and make an adjustment here, Gainer's overvaluation becomes irrelevant to the determination of any tax due. The parties stipulated that the container had not been placed in service in 1981 and the Tax Court therefore found *no* deductions or credits could have been taken in that year. Even if Gainer had correctly valued the container, the underpayment of tax would be the same because the container was not placed in service. Thus, Gainer's actual tax liability, after adjusting for failure to place the container in service, was no different from his liability after adjusting for any overvaluation. *See Todd*, 862 F.2d at 543. This formula has been adopted by the Tax Court and the Fifth Circuit. *See Gainer v. Commissioner*, 56 T.C.M. (CCH) 39, 40–41 (1988); *Todd v. Commissioner*, 89 T.C. 912 (1987), *aff'd*, 862 F.2d 540 (5th Cir.1988).

Moreover, the formal legislative history surrounding the recent enactment of section 6659A also supports such an interpretation and the application of the formula. Section 6659A provides for an addition to tax where a tax underpayment "is attributable to an overstatement of pension liabilities." 26 U.S.C. § 6659A (1986). The report of the House Ways and Means Committee provides that "[t]he portion of a tax underpayment that is attributable to a valuation overstatement is to be determined after taking into account any other proper adjustments to tax liability." H.R.Rep. No. 426, 99th Cong., 1st Sess. 763 (1985); *see also* Staff of the Joint Committee on Taxation, *General Explanation of the Economic Recovery Tax Act of 1986*, at 770

(Comm.Print 1987). This language is nearly identical to the language contained in the 1981 staff report. Because Congress modeled section 6659A after section 6659, it is not unreasonable to conclude that the same formula should apply to both.

The Commissioner argues that such a result would mean that where there are multiple grounds, including overvaluation, for a tax underpayment, no section 6659 penalty could ever be obtained. That is true only when there is some other ground for disallowing the entire portion of a deduction that otherwise might be disallowed for overvaluation. In other instances when multiple grounds exist, some portion of any underpayment may well be attributable to the overvaluation and some portion to the other grounds. *See General Explanation* at 333 n. 2.[4] *Cf. Irom v. Commissioner*, 866 F.2d 545, 547–48 (2nd Cir.1989) (where multiple grounds exist, section 6621 "attributable to" penalty applies when grounds are inseparable). The Commissioner's related argument that he would be forced to plead only a single penalty when faced with several alternatives is defective for the same reasons.

The Commissioner also argues that *Irom* should control here. *Irom* interprets section 6621(c), which provides for a penalty when a deficiency is "attributable to tax motivated transactions." 26 U.S.C. § 6621(c)(1) (Supp. IV 1986). The Second Circuit held that where there are two grounds to support a deficiency which are *inseparable*, and one supports a section 6621 penalty and the other does not, the taxpayer may be liable for the section 6621 penalty. *Irom*, 866 F.2d at 547–48. *Irom* expressly distinguished *Todd*, primarily on

---

**4.** The *General Explanation* to section 6659 gives the following example of multiple, but separable, grounds resulting in imposition of an overvaluation penalty:

The determination of the portion of a tax underpayment that is attributable to a valuation overstatement may be illustrated by the following example. Assume that in 1982 an individual files a joint return showing taxable income of $40,000 and tax liability of $9,195. Assume, further, that a $30,000 deduction which was claimed by the taxpayer as the result of a valuation overstatement is adjusted

down to $10,000, and that another deduction of $20,000 is disallowed totally for reasons apart from the valuation overstatement. These adjustments result in correct taxable income of $80,000 and correct tax liability of $27,505. Accordingly, the underpayment due to the valuation overstatement is the difference between the tax on $80,000 ($27,505) and the tax on $60,000 ($17,505) (i.e., actual tax liability reduced by taking into account the deductions disallowed because of the valuation overstatement), or $9,800 [sic].
*General Explanation* at 333 n. 2.

the basis of our reasoning as set forth in the preceding paragraphs. The *Irom* court noted that in *Todd,* the overvaluation became irrelevant because the containers were not placed in service during the relevant tax years. *Id.* That was the reason for assessing the deficiency, not the separable problem of overvaluation. *Irom* is consistent with *Todd* and our opinion.

Finally, the Commissioner argues that our decision leads to inequitable and anomalous results among taxpayers. The Commissioner suggests that some taxpayers will be liable for the section 6659 penalty if their containers were placed in service, while others like Gainer will not be liable for any penalties, even though their deductions and credits allegedly suffer from greater infirmities. We do not believe that our decision will lead to inequitable results as the Commissioner suggests,[5] but even if this were so, we cannot obviate the intent of Congress, once it has been determined, merely to avoid an inequitable result. *Todd,* 862 F.2d at 545 (citing *Commissioner v. Asphalt Products Co.,* 482 U.S. 117, 121, 107 S.Ct. 2275, 2278, 96 L.Ed.2d 97 (1987) (per curiam)).

### CONCLUSION

The Tax Court applied the correct formula to determine whether Gainer's underpayment was attributable to any over-valuation. We do not believe that an alternative test was intended by Congress. The decision of the Tax Court is AFFIRMED.

---

**5.** Gainer receives no deductions or credits related to the container for the 1981 tax year because it was not placed in service. Those taxpayers subject to the section 6659 penalty, however, still receive some deductions and credits. In addition, there was no fault on Gainer's part in failing to place the container in service in 1981. *See Todd,* 862 F.2d at 545. Moreover, the penalty does not depend on Gainer's knowledge that the Container was overvalued. A taxpayer could in good faith believe in the correctness of a valuation and still be subject to the penalty.