MANUEL GARCIA AND JUDY GARCIA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garcia v. Commissioner
Docket No. 6097-88
United States Tax Court
T.C. Memo 1991-451; 1991 Tax Ct. Memo LEXIS 500; 62 T.C.M. (CCH) 736; T.C.M. (RIA) 91451; September 16, 1991, Filed *500 Decision will be entered for the respondent. Henry D. Nunez, for the petitioners. Steven A. Wilson, for the respondent. WRIGHT, Judge. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION By notice of deficiency dated January 8, 1988, respondent determined the following additions to petitioners' Federal income tax: Additions to Tax
Year
Sec.6653(a) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6659
1980
$ 457.45
n/a n/a
$ 2,744.70
1981
n/a  71.45
* 428.70
1983
n/a  10.45
* -0- The issues for decision are: (1) Whether petitioners are liable for the addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a), (a)(1), and (a)(2); (2) whether petitioners are liable for a valuation overstatement addition *501 to tax under section 6659; (3) whether respondent's failure to publish Treasury Delegation Order 150-10 invalidates the determination of additions to tax; (4) whether respondent is estopped from determining additions to tax by the issuance of a prefiling notification letter; (5) whether petitioners are liable for a penalty under section 6673 for asserting positions which are frivolous and groundless. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. The facts of the instant case are largely identical to those of Wolf v. Commissioner, T.C. Memo 1991-212, with respect to the terms of the Encore master recording leasing program, and such facts are incorporated herein by this reference. While Wolf v. Commissioner, T.C. Memo 1991-212, involved the Encore master recording leasing program for 1982, and the instant case involves the leasing program for 1983, there are no material differences between the two years in the Encore prospectus, its officers, and its business practices. Petitioners resided in Shaver Lake, California, when they filed *502 their petition. Petitioner Manuel Garcia is employed in heavy construction. Petitioner Judy Garcia is a housewife. Petitioners have no experience in the music recording industry, and are unsophisticated in financial matters. Petitioners learned of the Encore master recording leasing program through their accountant, Tony Labendeira. Petitioners had previously invested in an energy tax shelter recommended by Labendeira. In addition, through Labendeira and Encore, petitioners invested in a Beach Boys master recording in 1982, unrelated to the investment at issue, which had no sales through 1983 and had sold 12 albums as of trial. In discussing the investment in issue, Labendeira informed petitioners that he had examined the tax laws and the Encore program and that the tax benefits claimed by Encore were available for the trade or business of marketing master recordings. Petitioners were unaware that Labendeira, who had no experience in the music industry, received commissions from Encore based on a percentage of the amount his clients invested. Eight partnerships formed by Labendeira participated in the Encore program in 1982. None of them realized a profit. Labendeira did *503 not investigate the specific master recording in which petitioners invested in 1983, though earlier he had conducted a superficial examination of the Encore program. Labendeira made no sales projections of the master recording in which petitioners invested, and was not qualified to do so, though he did discuss with two distributors the sales potential of Gospel recordings in general. Labendeira did not listen to the master recording in issue prior to petitioners' investment. Petitioners did not conduct an investigation of Encore or its principals in order to determine whether they had experience or previous successes in promoting master recordings. Petitioners did not discuss the program with Encore's president and sole shareholder or any of its salesmen other than Labendeira. During 1983, petitioners invested in Five J Records (Five J), a partnership formed by Labendeira as a vehicle for his clients to participate in the Encore program. Prior to investing, petitioners were unaware of the identity of the other Five J partners. As of trial, petitioners were unaware of the identity of Five J's managing partner. On December 27, 1983, Five J entered into a lease agreement with *504 Encore for a master recording of the Harvesters (the master). The Harvesters are a virtually unknown Gospel group. The lease agreement does not refer to the song titles recorded on the master. Pursuant to the lease agreement, Five J made an advance rental payment to Encore of $ 20,000 on December 27, 1983. The term of the lease was 65 months, with additional periodic rental payments equal to 75 percent of the gross receipts from album sales. Neither the terms of the lease agreement nor the amount of the rental payments was negotiable. Petitioners were unaware of the particular master in which they were investing, including song titles, prior to their investment. They did not know when the master was recorded, where it was produced, or its production cost. They did not see or hear the master prior to investing. Petitioners did not know where the Harvesters were from or where and how often they were touring. In addition, petitioners were unaware if the Harvesters had made other recordings and if any of their albums had ever been sold. Petitioners did not seek independent opinions regarding the value or marketability of the master prior to investing in five J. Petitioners *505 neither sought nor received an objective profit projection regarding the program. All information regarding the potential profitability of the investment in Five J was provided by Labendeira based on unverified sales projections for popular Gospel artists in general. The only appraisal reports available to petitioners were addressed to Gabriel Records, rather than Encore or Five J, and dated December 29, 1983. Encore did not provide the appraisal reports until after Five J entered into the lease agreement. The appraisal reports were prepared specifically to substantiate the claimed value of the master for tax purposes. The appraisal reports are too general and conclusory to provide any guidance as to the fair market value of the master or the probable profitability of the master. The master is an amateurish production, lacking basic production techniques. The recording was not created in a professional recording studio. Petitioners failed to investigate the chain of title of the master either before or after investing in Five J. The chain of title of the master is: Date
Price
Seller
Buyer
12/28/83
$   2,000
Mustard Seed Records
Gabriel Records
12/27/83
20,000
Encore (lessor)
Five J (lessee)
12/29/83
500,000
Gabriel Records
Encore
*506 Encore had no title to the master when the lease agreement was executed. Encore's consideration to Gabriel Records for the master consisted of $ 7,000 in cash and a promissory note for $ 493,000. For 1983 through 1987, Five J reported the following income and expenses: Date
Gross Receipts
Rent
Misc. Expenses
1983
-0-
$ 16,000
$ 500.00
1984
319.00
1,000
3,643.00
1985
80.75
1,000
-0-  1986
-0-
51
5.27
1987
-0-
-0-
-0-  1988
-0-
-0-
-0-  As of trial, petitioners did not know how many albums Five J had pressed or sold, nor the retail price at which Five J attempted to sell the albums. On December 29, 1983, Encore and Five J executed a form titled "Election To Pass Investment Tax Credit From Lessor To Lessee." The form specifies that on December 27, 1983, possession of the master was transferred to Five J. Through the form, Encore, as lessor, elected pursuant to section 48(d)(1) to treat Five J, as lessee, as having purchased the master. Encore passed through investment credit to Five J based on the valuation of the master at $ 500,000. Petitioners reported gross income of $ 28,448 on their 1983 Federal income tax return. After deductions and credits *507 attributable to their investment in Five J, petitioners' reported tax liability for 1983 was zero. Petitioners claimed tax benefits from Five J in 1983 in the amount of $ 3,816 for claimed losses and $ 11,555 for claimed investment credit. In addition, petitioners carried back excess investment credit for 1980 of $ 11,508, and for 1981 of $ 1,429. Their total investment in Five J was $ 5,500, paid on December 27, 1983. On August 18, 1986, a Notice of Final Partnership Administrative Adjustment (FPAA) for taxable year 1983 was mailed to petitioner Judy Garcia as Tax Matters Partner. Also on August 18, 1986, an FPAA for taxable year 1983 was mailed to petitioners as partners. Through the FPAA for taxable year 1983 respondent determined the adjusted basis of the master was zero. The primary grounds expressed in the FPAA for the determination were that Five J's activities did not constitute a trade or business, were not entered into for profit, and lacked economic substance. Neither petitioner Judy Garcia as Tax Matters Partner nor any other partner filed a petition for judicial review of the FPAA. OPINION Additions To Tax Under Section 6653(a), (a)(1), and (a)(2)
Section *508 6653(a) and, for taxes the last date prescribed for payment of which is after December 31, 1981, section 6653(a)(1) provide for an addition to tax equal to 5 percent of any underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations, and section 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest payable on the deficiency with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of rules and regulations. Negligence under section 6653(a), (a)(1), and (a)(2) is the lack of due care or the failure to act as a reasonable person would act under the same circumstances where there is a legal duty to act. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that no part of the underpayments for the years at issue is due to negligence or intentional disregard of rules and regulations. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). While petitioners claim to have engaged in the commercial development of the master, they had no experience in the music recording industry and *509 devoted no time or attention to the venture. They did not seek independent advice about the economic merit of leasing the master. Petitioners did not listen to the master prior to leasing it nor did they seek an appraisal, though the Encore prospectus informed them that the basis of the master for purposes of the investment credit was dependent on its value. They did not inquire as to the date and the circumstances under which the master was recorded. They did not inquire as to the Harvesters' album sales history. They did not ensure that Encore had title to the master prior to investing. They did not inquire into the experience of Encore in the music industry. They did not inquire about past successes or failures of the Encore program. They did not monitor sales of albums pressed from the master. Petitioners' actions do not approach the actions which a reasonable and ordinarily prudent person would have taken under the circumstances. Petitioners, through their interest in Five J, were purportedly engaged in the trade or business of marketing the master. Such an activity requires a degree of participation and investigation higher than that which petitioners took. Petitioners *510 also argue that they reasonably and in good faith relied on the advice of their tax advisor, Labendeira, and thus exercised reasonable care pursuant to United States v. Boyle, 469 U.S. 241, 83 L. Ed. 2d 622, 105 S. Ct. 687 (1985). Respondent agrees that good faith reliance on professional advice concerning tax laws may establish reasonable care. United States v. Boyle, supra; Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986). However, "Reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered." Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. (June 27, 1991). Though petitioners determined that, under the proper circumstances, the leasing and marketing of a master recording would qualify for the investment credit and for the deduction of losses, petitioners did nothing to ensure that those circumstances were present in the instant case. See McCrary v. Commissioner, 92 T.C. 827, 849 (1989). First, the tax opinion prepared by Nunez and included as part of the prospectus *511 warned that the availability of the investment credit and deductions for losses was dependent on: (1) The partnership qualifying as a trade or business, and (2) an accurate valuation of the master. However, petitioners' testimony establishes that they conducted none of the investigation and analysis that is associated with the commencement of a business. In addition, petitioners did nothing to ensure that the valuation of the master was accurate. They failed to request or review any appraisals prior to their investment, and the only appraisals reviewed after their investment are patently inadequate. With respect to the assistance and advice provided by Labendeira, petitioners were negligent in not demanding more information prior to investing. With regard to economic analysis, Labendeira simply calculated a break-even point using assumed figures. Petitioners failed to exercise reasonable care in not demanding a more sophisticated analysis based on realistic, probable sales figures. In addition, Labendeira did nothing to ensure that the conditions provided in Nunez's tax opinion were present. In conclusion, all of the underpayments for the years at issue were due to negligence *512 or intentional disregard of the rules and regulations. Respondent's determination regarding the addition to tax under section 6653(a), (a)(1), and (a)(2) is therefore sustained. Addition To Tax For Valuation Overstatement Under Section 6659
Section 6659(c) defines "valuation overstatement" to include the claim on a return of a value of 150 percent or more of the correct value. The amount of the addition equals the applicable percentage, as determined under section 6659(b), of the underpayment so attributable. Sec. 6659(a). In the instant case, the value claimed is more than 250 percent of the correct value, as determined at the partnership level by respondent through his FPAA, and therefore the applicable percentage is 30 percent. See Maxwell v. Commissioner, 87 T.C. 783 (1986). However, petitioners contend that the section 6659 addition to tax is inapplicable because the master was not "placed in service," as required by section 46(c)(1), until 1984, when records were first produced from the master, thus disqualifying the master for the investment credit, and that, therefore, the rationale set forth in Todd v. Commissioner, 89 T.C. 912 (1987), *513 affd. 862 F.2d 540 (5th Cir. 1988), precludes liability for the addition to tax under section 6659. See also McCrary v. Commissioner, supra; Gainer v. Commissioner, T.C. Memo 1988-416, affd. 893 F.2d 225 (9th Cir. 1990). Petitioners argue that the underpayment in the instant case is attributable to the failure of the master to be placed in service to qualify for the investment credit under section 46(c)(1), not to a valuation overstatement, and that therefore section 6659 is inapplicable. However, the "Election To Pass Investment Tax Credit From Lessor To Lessee" executed by Encore and Five J establishes that the master was placed in service in 1983. Section 1.46-3(d)(3), Income Tax Regs., provides that: property with respect to which an election is made under section 1.48-4 to treat the lessee as having purchased such property shall be considered placed in service by the lessor in the taxable year in which possession is transferred to such lessee.
Thus, the master was placed in service in 1983, the taxable year in which possession was transferred to Five J. We reject petitioners' contention *514 that the master was not placed in service until 1984, and that its failure to qualify for the investment credit is attributable to the failure to place it in service as required by section 46(c)(1). Because the failure of the master to qualify for the investment credit is not attributable to section 46(c)(1), we need not consider whether Todd v. Commissioner, supra, is applicable to the instant case. Because the value claimed on petitioners' Federal income tax return in each of the years in issue exceeds the correct value determined in each such year by more than 150 percent, and because the underpayment attributable to the valuation overstatement is at least $ 1,000 in taxable years 1980 and 1981, we sustain respondent's determination of the addition to tax under section 6659. Respondent's Failure To Publish Treasury Delegation Orders 150-10 Does Not Invalidate The Assessment Of Additions To Tax By Respondent
Petitioners contend that respondent was granted authority to issue notices of deficiency pursuant to Treasury Delegation Order (TDO) 150-10, 51 Fed. Reg. 25284 (July 11, 1986), effective October 1, 1986. TDO 150-10 provides *515 a complete list of Internal Revenue Districts. TDO 150-10 was not published in the Federal Register in accordance with section 5 of the Federal Register Act and section 3 of the Administrative Procedure Act. Therefore, petitioners argue, the Secretary of the Treasury did not properly delegate to respondent authority to send statutory notices of deficiency. This Court has rejected petitioners' argument in Stamos v. Commissioner, 95 T.C. 624 (1990). In that opinion we held that TDO 150-10 need not be published in the Federal Register to be effective, and therefore, the Secretary duly delegated to respondent authority to issue statutory notices of deficiency. Based on our holding in Stamos v. Commissioner, supra, we reject petitioners' argument. Respondent Is Not Estopped By The Issuance Of A Prefiling Notification Letter From Subsequently Determining Additions To Tax
Petitioners contend that respondent is estopped from determining additions to tax because: (1) He mailed a prefiling notification letter and thereafter discouraged petitioners from amending their Federal income tax returns for the years at issue; and (2) respondent's *516 revenue agent advised petitioners that additions to tax would still be determined if the returns were amended. We find this contention completely without merit. Petitioners have failed to establish any legal or factual basis for the estoppel they claim. There is no evidence that respondent made any false representations to petitioners. Respondent does not dispute that his revenue agent informed petitioners' accountant that even if petitioners filed amended returns, additions to tax would still be determined. There is nothing irregular or misleading about such a statement. Because petitioners have failed to present a legal or factual basis for their argument, we need not discuss the elements of the doctrine of equitable estoppel. Penalty Pursuant To Section 6673
Section 6673 provides that whenever it appears that proceedings before this Court have been instituted or maintained by the taxpayer primarily for delay, that the taxpayer's position in such proceedings is frivolous or groundless, or that the taxpayer unreasonably failed to pursue available administrative remedies, damages in an amount not in excess of $ 5,000 shall be awarded to the United States. As to positions *517 taken after December 31, 1989, in proceedings which are pending on or commenced after such date, this Court may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7731(a), 103 Stat. 2106, 2400. Petitioners conceded that they were not entitled to the investment credit and losses which they claimed on their Federal income tax returns. In addition, petitioners accepted respondent's valuation of the master. However, a taxpayer cannot avoid sanctions under section 6673 merely because he has conceded an issue which he would certainly have lost where there remain issues which are frivolous or groundless. In addition, because the FPAA issued by respondent conclusively determined that the partnership was not entitled to an investment credit (a partnership item), and that Five J's basis in the master is zero, petitioners have actually conceded nothing. See Maxwell v. Commissioner, supra.Therefore we place no weight on petitioners' concessions regarding the investment credit and losses. We are particularly concerned by petitioners' concession and subsequent argument *518 that the master was not placed in service until taxable year 1984. This "concession," which is totally unsupported by the evidence, is an attempt to avoid liability for the addition to tax under section 6659 pursuant to the principles established in Todd v. Commissioner, supra.See McCrary v. Commissioner, supra at 864. The documentation associated with the lease, which was available to petitioners, and the appropriate income tax regulation establish that the master was placed in service in 1983. Petitioners' concession and their attempt to analogize the instant case to Todd v. Commissioner, supra, is a frivolous and groundless argument which is contrary to undisputed evidence and Treasury regulations of which petitioners cannot have been unaware. Also at issue in this case is the addition to tax under section 6653(a), (a)(1), and (a)(2). Many cases in this Court, almost identical to the instant case, have held the taxpayer liable for such additions. See McCrary v. Commissioner, supra; Avers v. Commissioner, T.C. Memo 1988-176. Petitioners have failed to distinguish *519 such cases, or to find any statutory support for their position. Petitioners were unentitled to the deductions and credits claimed, and were negligent in claiming said deductions and credits. Petitioners' arguments regarding negligence and intentional disregard for the rules and regulations are groundless. We find petitioners' argument regarding the filing of a prenotification letter particularly frivolous. Petitioners failed to present a cogent legal or factual basis for this argument, which suggests to the Court that petitioners have advanced as many arguments in the instant case as possible, without any concern for their validity or relevance. Petitioners' arguments have complicated and delayed an issue the resolution of which is clear and which has been frequently decided against the taxpayer in similar cases. Petitioners' conduct throughout the instant case is typical of the tactics which section 6673 is intended to deter. Finally, in two District Court cases, John D. Werft, et al. v. Commissioner, docket No. CVF-87-013-EDP (E.D. Cal., June 20, 1988), and Vielbig, et al. v. Commissioner, docket No. CVF-86-363-MDC (E.D. Cal., Aug. 26, 1988), which involved similar *520 Encore partnerships, the District Court held that the taxpayers had entered into the transactions without a profit objective and accordingly disallowed all of the partnerships' claimed deductions. Petitioners' counsel litigated the Werft case and was provided a copy of the Vielbig case by respondent prior to trial. See Sydnes v. Commissioner, 74 T.C. 864, 872 (1980), affd. 647 F.2d 813 (8th Cir. 1981). We have warned similarly situated taxpayers that penalties were likely to be required in an appropriate case. Looney v. Commissioner, T.C. Memo 1988-332. Petitioners have advanced frivolous and groundless arguments in which they have persisted without reason. Pursuant to section 6673, petitioners are required to pay a penalty in the amount of $ 1,000 to the United States. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50% of the interest due on the deficiency.↩