967 F.2d 588
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paul S. MOSESIAN; Diane M. Mosesian, Petitioner-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 91-70058.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 12, 1992.
Decided May 29, 1992.
 
 Before GOODWIN, FARRIS and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I.
 OVERVIEW
 
 2
 Paul Mosesian, a lawyer/business person, and his wife Diane Mosesian, (taxpayers) appeal from the U.S. Tax Court's holding that their investments in wind turbines lacked economic substance and could not form the basis for tax deductions or credits. The taxpayers also appeal: 1) their penalties for negligence under I.R.S. Code section 6653(a), and for underpayment of taxes attributable to a valuation overstatement under section 6659; 2) the imposition of increased interest rates on their substantial underpayment of taxes attributable to a tax motivated transaction under section 6621(c); and 3) their failure to qualify for a theft loss deduction. We have jurisdiction pursuant to I.R.S. Code § 7482, and we affirm.
 
 II.
 BACKGROUND
 
 3
 In October, 1981, taxpayers received a prospectus from Trans Power Manufacturing, Inc., a Utah corporation whose stated purpose was to build, operate, and sell wind machines that would produce electricity for sale to California public utilities. Taxpayers also received materials stating that investments in these wind turbines could result in a tax write-off of better than five-to-one for 1981, and of better than four-to-one for 1982. However, these materials also stated that Trans Power assumed no responsibility for the tax consequences of purchasing a wind turbine, that the tax benefits were "not free from doubt," and might be "reduced or entirely eliminated" if the I.R.S. prevailed on a position contradictory to that outlined by Trans Power, and that the purchaser should consult a tax adviser.
 
 
 4
 On December 15, 1981, with no experience in wind energy investment and without obtaining an independent appraisal or evaluation of Trans Power's equipment, taxpayers executed an agreement for the purchase of a yet-to-be built wind turbine from Trans Power. The total purchase price was $208,000, of which $150,000 was paid with a non-recourse promissory note secured only by taxpayers' interest in the wind turbine.[1]
 
 
 5
 On December 2, 1982, taxpayers executed an agreement for the purchase of a second, yet-to-be built, wind turbine. The purchase price was again $208,000 paid in part with a $155,000 nonrecourse promissory note also secured only by taxpayers' interest in the wind turbine.[2]
 
 
 6
 On their 1981, 1982, and 1983 federal income tax returns, taxpayers claimed net losses resulting from investment in the first wind turbine of $33,710, $46,540, and $44,730, respectively. They also claimed an investment credit with respect to the first wind turbine, only a portion of which could be used for those years, and a business energy credit, none of which could be used for those years. The unused credits were carried back to taxpayers' taxable years 1978, 1979, and 1980, for which they received refunds totalling $42,148. Thus, within months of their initial wind turbine investment, taxpayers had recouped almost the entire amount they had actually paid.
 
 
 7
 On their 1982 and 1983 Federal income tax returns, taxpayers claimed net losses resulting from their investment in the second wind turbine of $36,200 and $45,760, respectively. On their 1982 tax return, they claimed an investment credit and business energy credit for their investment in the second wind turbine which reduced their Federal income tax liability from $30,118 to $0. Taxpayers' Federal income tax liability for 1983 was reduced by $15,082 due to carryover of unused 1982 investment credits and business energy investment credits attributable to the second wind turbine.
 
 
 8
 Ultimately, only a handful of the Trans Power wind turbines were ever built and these were unreliable and incapable of operating for more than a day or two at a time without breaking down. No more than three were ever connected to a power grid to enable electricity generated by them to be sold to a utility.
 
 
 9
 On June 5, 1987, the Commissioner of Internal Revenue sent taxpayers a notice of deficiency for the taxable years 1978 through 1983. This notice also indicated that the Commissioner had determined that taxpayers were liable for the penalties imposed by Internal Revenue Code sections 6653 and 6659 as well as for the additional interest rates imposed under section 6621.
 
 
 10
 Taxpayers sought a redetermination of the deficiencies by the U.S. Tax Court which affirmed the Commissioner's calculation of deficiencies and assessment of penalties. The tax court held that the transactions surrounding taxpayers' investment in the wind turbines lacked economic substance and should be disregarded for federal tax purposes, that the purchase price of the wind turbines greatly exceeded their value, and that the taxpayers' purchase of the wind turbines was motivated not by a desire for profits, but instead by a desire for tax deductions and credits.
 
 III.
 DISCUSSION
 
 11
 A. THE WIND TURBINE INVESTMENTS LACKED ECONOMIC SUBSTANCE
 
 
 12
 We review for clear error the tax court's conclusion that the wind turbine investments lacked economic substance, and were therefore sham transactions. We review de novo the legal standard applied by the tax court in making the determination that a transaction is a sham. Casebeer v. C.I.R., 909 F.2d 1360, 1362 (9th Cir.1990).
 
 
 13
 Whether a transaction is a sham is determined by a two-part test:
 
 
 14
 1. has the taxpayer shown a business purpose for engaging in the transaction other than tax avoidance? [A subjective test.]
 
 
 15
 2. has the taxpayer shown that the transaction had economic substance beyond the creation of tax benefits? [An objective test.]
 
 
 16
 Casebeer v. C.I.R., 909 F.2d 1360, 1363 (9th Cir.1990), citing Bail Bonds By Marvin Nelson v. C.I.R., 820 F.2d 1543, 1549 (9th Cir.1987).
 
 
 17
 This test does not demand a rigid two-step analysis. Rather, "the consideration of business purpose and economic substance are simply more precise factors to consider in the application of this court's traditional sham analysis; that is, whether the transaction had any practical economic effects other than the creation of income tax losses. (Citations omitted.) Thus, the tax court's failure to specifically delineate a two-prong test and the factual findings that support each prong is not itself fatal." Sochin v. C.I.R., 843 F.2d 351, 354 (9th Cir.1988).
 
 
 18
 While the tax court did not explicitly state that it was applying the traditional two-part test, or specifically designate its inquiry as one seeking a sham transaction, we find no error in its conclusions that the investments were without economic substance, that taxpayers were motivated by no purpose other than obtaining tax benefits, and that no reasonable possibility of making a profit existed. These conclusions were based on findings that the fair market value of the subject wind turbines was only $3,000; that seventy-five percent of the purchase price of the wind turbines was paid with nonrecourse debt[3]; that only $800 in payments were ever made on the over $300,000 in nonrecourse notes; that the wind turbines were never fully operational, could never have operated profitably and were not capable of functioning as promoted; and finally, that the promotional materials received by taxpayers were devoted almost exclusively to the tax benefits of the scheme.
 
 
 19
 Taxpayers' argument that the tax court erred in relying on the Commissioner's expert's testimony does not help them. The weight given an expert's testimony, or her credibility, are not proper subjects for appellate review. See D & S Redi-Mix v. Sierra Redi-Mix, 692 F.2d 1245, 1248 (9th Cir.1982). This is particularly so in the area of valuation where trial courts have broad discretion. See Ebben v. C.I.R., 783 F.2d 906, 909 n. 1 (9th Cir.1986).
 
 
 20
 Taxpayers' argument that the Tax Court erred in finding that the wind turbines were never fully operational because the court gave too much weight to the government's witness and not enough to theirs, is similarly unhelpful. The evaluation of conflicting evidence and live testimony is a primary function of the tax court and its findings are entitled to great deference. See Enrici v. Commissioner, 813 F.2d 293, 295 (9th Cir.1987).
 
 
 21
 Last, taxpayers' reliance on Fox v. Commissioner, 82 T.C. 1001, 1021, (1984), is misplaced. Fox held that when an investment is congressionally approved or encouraged it may still be considered for tax purposes even if motivated primarily by a desire for tax benefits. Id. However, Fox requires that an investor have at least a secondary profit motive. Id. Here the taxpayers were only motivated by possible tax benefits.
 
 
 22
 B. THE TAXPAYERS ARE LIABLE FOR THE ADDITION TO TAX UNDER INTERNAL REVENUE CODE SECTION 6653
 
 
 23
 We review the Tax Court's finding that the taxpayers are liable for an addition to tax under I.R.S. Code section 6653 for clear error, Collins v. C.I.R., 857 F.2d 1383, 1386 (9th Cir.1988). Section 6653 provides that if any part of an underpayment of tax is due to negligence or disregard of I.R.S. rules and regulations, an amount equal to 5 percent of the underpayment is added to the tax. The Commissioner's decision to impose negligence penalties is presumptively correct, Hansen v. C.I.R., 820 F.2d 1464, 1469 (9th Cir.1987), giving the taxpayer the burden of showing that an underpayment did not result from a lack of due care or failure to do what a reasonable, prudent person would do under the circumstances. Collins v. C.I.R., 857 F.2d at 1386.
 
 
 24
 We find no error in the tax court's findings that taxpayers claimed substantial credits and deductions with respect to a dubious investment with little or no investigation of its merits, that they had no experience with wind energy and did not consult anyone with experience in wind energy, that minimal investigation would have revealed that the purchase price of the machines was inflated and that taxpayers were not entitled to the deductions or credits. This was not the behavior of a reasonable, prudent investor.
 
 
 25
 Taxpayers' reliance on the Fifth Circuit case, Heasley v. C.I.R., 902 F.2d 380, (5th Cir.1990), is misplaced. Heasley held that two unsophisticated investors who lacked high school educations, held blue collar jobs, and had no investment experience were not liable for the negligence penalties under section 6653 even though they failed to investigate their investments and instead relied on their financial advisers. Id., at 381. In sharp contrast to the investors in Heasley, the taxpayers were sophisticated investors. Mr. Mosesian was a practicing lawyer with training in the area of tax and significant business experience.
 
 
 26
 C. THE DEFICIENCIES IN INCOME TAX WERE ATTRIBUTABLE TO AN OVERSTATEMENT OF THE VALUE OF THE WIND TURBINES WITHIN THE MEANING OF SECTION 6659 OF THE TAX CODE
 
 
 27
 We review the tax court's finding that the wind turbines were overvalued for clear error, Beck v. C.I.R., 678 F.2d 818, 820 (9th Cir.1982). We review de novo whether the taxpayers' income tax deficiency was "attributable to" a valuation overstatement, and thus whether they are liable for the penalties imposed by section 6659. Gainer v. C.I.R., 893 F.2d 225, 226 (9th Cir.1990).
 
 
 28
 Section 6659 provides that if an underpayment of income tax is attributable to a valuation overstatement, the taxpayer is subject to a graduated penalty equal to a percentage of the underpayment.[4] The amount "attributable to" a valuation overstatement is equal to the difference between a taxpayer's correct tax liability and the tax liability as reduced by the valuation overstatement. Gainer v. C.I.R., 893 F.2d 225, 227 (9th Cir.1990).
 
 
 29
 The taxpayers reported an adjusted basis in the first wind turbine of $208,000 and in the second wind turbine of $213,000. Since the transactions were shams devoid of economic substance, the tax court properly held that the correct adjusted basis in the wind turbines was zero and found them to be overvalued. Since these transactions formed the basis of substantial deductions and credits which resulted in an underpayment of taxes, the tax court also properly held that the taxpayers are liable for 30 percent of the underpayment as required by section 6659. There was no error.
 
 
 30
 D. THE DEFICIENCIES IN INCOME TAX CONSTITUTED A SUBSTANTIAL UNDERPAYMENT OF TAX ATTRIBUTABLE TO A TAX MOTIVATED TRANSACTION WITHIN THE MEANING OF SECTION 6621 OF THE TAX CODE
 
 
 31
 We review for clear error the tax court's determination that the taxpayers' income tax deficiency constituted a substantial underpayment of tax attributable to a tax motivated transaction, Kennedy v. C.I.R., 876 F.2d 1251, 1254 (6th Cir.1989).
 
 
 32
 Section 6621 of the code provides for an increase in the rate of interest to 120 percent of the rate otherwise imposed by the code with respect to any "substantial underpayment" of tax attributable to a "tax motivated transaction." A substantial underpayment is defined as "any underpayment in excess of $1,000." I.R.S. Code § 6621(c)(2). A tax motivated transaction is defined to include "any valuation overstatement (within the meaning of 6659(c))," and "any sham or fraudulent transaction." I.R.S. Code § 6621(c)(3)(A)(i), (v).
 
 
 33
 Taxpayers' underpayment of income tax was far in excess of $1,000. We have already held that the wind turbine investments were sham transactions that formed the basis of valuation overstatements. Thus, the tax court did not err in imposing interest rate increases.
 
 
 34
 E. THE TAXPAYERS ARE NOT ENTITLED TO A THEFT LOSS DEDUCTION UNDER INTERNAL REVENUE CODE SECTION 165 FOR THEIR INVESTMENT IN THE WIND TURBINES
 
 
 35
 We review the tax court's determination that the taxpayers failed to come forward with sufficient evidence to support a theft loss deduction for clear error, C.I.R. v. Duberstein, 363 U.S. 278, 291 (1960).
 
 
 36
 Section 165(c)(3) of the Internal Revenue Code allows a taxpayer to deduct an unreimbursed loss of property resulting from theft. The taxpayer must prove that theft in fact occurred, the amount of the theft loss and the date of discovery. See Treas.Reg. § 1.165-8; Russell v. United States, 592 F.2d 1069, 1072 (9th Cir.1979).
 
 
 37
 The taxpayers offered no substantial proof to support their claim of a deduction for theft loss and the tax court correctly disallowed it.
 
 
 38
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Taxpayers' total payments on this note did not exceed $800
 
 
 [2]
 Taxpayers made no payments on this note
 
 
 [3]
 If the price of an asset purchased with nonrecourse debt greatly exceeds the value of the asset, the nonrecourse debt is not bona fide and will not be recognized for tax purposes because the purchaser is not making a capital investment in the unpaid portion of the purchase price. See Estate of Franklin v. C.I.R., 544 F.2d 1045, 1048-1049 (9th Cir.1976)
 
 
 [4]
 Section 6659 was repealed by section 7721(c)(2) of the 1989 Omnibus Budget Reconciliation Act, Pub.L. No. 101-293, 103 Stat. 2106. Similar provisions are now found in section 6662 of the Internal Revenue Code