BERTRAM V. HARTFORD AND GRACE B. HARTFORD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hartford v. Commissioner
Docket No. 15533-93
United States Tax Court
T.C. Memo 1995-351; 1995 Tax Ct. Memo LEXIS 346; 70 T.C.M. (CCH) 224; July 31, 1995, Filed *346 Decision will be entered under Rule 155. Bertram V. Hartford, pro se. For respondent: Franklin R. Hise. KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in, additions to, and increased interest on the underpayment of petitioners' Federal income taxes for the years and in the amounts as follows: Additions to Tax Increased Interest
Year
Deficiency
Sec. 6653(a)
Sec. 6659
Sec. 6621(c)
1979
$ 10,035
$ 502
$ 3,011 *
1980
291,430
14,572
87,429 *
1981
473,037
23,652
141,911 *
1982
85,302
4,265
25,591 *
1983
239,831
11,994
71,940 *
1984
266,146
13,307
78,937 *
1985
130,859
6,543
39,258 *
1986
229,659
11,483
43,586 *
1987
14,732
737
4,420 *
1988
15,377
769
3,837 *
1989
391
--
--
--
* The entire underpayment of income taxes for petitioners'
taxable years 1979, 1980, 1981, 1982, and 1987,
and a portion of
the underpayment of income taxes for
petitioners' taxable years
1983, 1984, 1985, 1986, and 1988 are substantial underpayments
attributable to tax-motivated transactions under sec. 6621(c),
formerly sec. 6621(d).
All statutory references are *347 to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. After concessions, the issues for decision are: (1) Whether documents attached to petitioners' brief which was filed after trial are admissible as evidence; (2) whether petitioners were engaged in horsebreeding activities for profit for purposes of section 183; (3) whether gains attributable to a partnership in the amounts of $ 24,449 and $ 1,409 reported in 1981 and 1982, respectively, were capital or ordinary in nature; (4) whether a California State tax refund was includable in petitioners' 1982 income; (5) whether investment fees paid to Samuels-Kramer in 1982, with respect to investments with First Western Government Securities, were deductible; (6) whether petitioners are liable for additions to tax for negligence pursuant to section 6653(a) for tax years 1979 through 1980, section 6653(a)(1) and (2) for tax years 1982 through 1985, section 6653(a)(1)(A) and (B) for tax years 1986 and 1987, and section 6653(a)(1) for 1988; (7) whether any underpayment of tax was attributable to a valuation overstatement as defined *348 in section 6659; and (8) whether the transactions were tax motivated as defined by section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in San Antonio, Texas, at the time the petition was filed. References to petitioner in the singular are to Bertram Hartford. Throughout all years in issue, petitioners enjoyed a sizable income derived from dividends, interest, and petitioner's salary prior to his retirement. During these years, petitioners reduced their income tax liability through claimed losses in investments, such as the International Options Co. (also known as Comark) and thoroughbred horsebreeding. Respondent determined that these investments were sham transactions entered into solely for tax benefits and disallowed all deductions associated with them. Horsebreeding
Beginning in 1981, petitioners claimed deductions on their tax returns from various horsebreeding investments. Petitioner's activities allegedly consisted of the purchase of whole or part interests in thoroughbred horses, followed by the boarding, care, *349 and later sale of them. All of the purchases and sales were between petitioner and Edward A. Seltzer (Seltzer) or entities controlled by Seltzer. In each transaction, petitioner and Seltzer executed a contract which indicated a cash payment and the execution of a note. At trial, petitioner produced no evidence that initial cash payments or interest and principal payments were ever made. Sometimes, upon the due date, the horse for which the note was due would allegedly be sold back, or another horse would be sold, the consideration being the cancellation of the expiring note. These dealings resulted in considerable accelerated depreciation deductions, capital losses, and farm losses. Expenses for care, insurance, boarding, breeding, and grooming fees generated the farm losses. Petitioners reported the losses and expenses on their Federal income tax returns for the years 1981 through 1988. Additionally, petitioners applied a claimed net operating loss carryback from 1982 to the 1979 and 1980 tax years in the amounts of $ 10,035 and $ 291,430, respectively. Consistently the reported sales produced losses. Petitioner was aware of the tax ramifications of the various transactions into *350 which he entered, but he contends that these considerations did not motivate his actions. He claims that because he invested so much money in the horsebreeding activity, he expected a minimum return of 25 percent for the first 2 years. These two statements were the extent of petitioners' case with regard to horsebreeding, aside from the joint exhibits, which were petitioners' tax returns for the years 1981 through 1989, miscellaneous bills of sale, and accompanying notes payable, not stipulated to be true. Petitioners did not offer into evidence expert testimony as to the value of the horses or to rebut that offered by respondent. Petitioners filed their brief and reply brief with various documents attached that had not been introduced at trial. Comark Income
On their 1981 and 1982 tax returns, petitioners reported capital gain from an investment in Comark in the amounts of $ 24,449 and $ 1,409. On September 23, 1985, petitioners executed a closing agreement previously executed by respondent with respect to the investment with Comark. That agreement provided that partnership distributions are includable as ordinary income by petitioners in the year received. Respondent determined *351 that income attributable to investments in the Comark partnership reported on petitioners' 1981 and 1982 returns should have been reported as ordinary income pursuant to the closing agreement. State Tax Refund
On their 1981 return, petitioners claimed $ 117,637 as a deduction on their Schedule A form for State and local income taxes paid in 1981. In 1982, petitioners received a refund in the amount of $ 4,446 from the State of California. Petitioners did not report the $ 4,446 State income tax refund as income on their 1982 Federal income tax return. Petitioners reported on their amended 1981 return negative taxable income in the amount of $ 15,185. After proposed corrections by respondent, petitioners' taxable income for 1981 was $ 1,277,337. First Western Government Securities
Petitioners claimed deductions for investment fees paid to Samuels-Kramer in the amounts of $ 8,405 and $ 4,722 in 1981 and 1982, respectively. Such fees were on account of alleged investments held with First Western Government Securities. Respondent determined in the notice of deficiency that such investment was not held for the production of income, and for that reason disallowed the deductions. *352 OPINION Petitioners' case consisted of the testimony of Bertram Hartford, which was very sketchy. Grace Hartford was not present at the hearing. Petitioner introduced no expert testimony or any documents. Following the trial, petitioners attached documents to their briefs (including an alleged valuation report) that had not been admitted into evidence at trial. Statements in briefs do not constitute evidence. Rule 143(b). Accordingly, we hold that the exhibits received from petitioners which were not offered at trial are not admitted into evidence and are not a part of the record. Petitioners have the burden of overcoming the presumption of correctness afforded the Commissioner in the notice of deficiency. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Deductions are a matter of legislative grace, and petitioners bear the burden of proving they are entitled to any deductions claimed on their return. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Horsebreeding
Respondent argues that all deductions and losses resulting from the horsebreeding activity should be disallowed because *353 the activity was not conducted for profit. To meet his burden, petitioner must establish that there was an activity which was engaged in for profit within the meaning of section 183. Petitioner argues that he expected to make a profit. We agree with respondent that petitioner has not met his burden of proof. Section 183(a) limits any deductions attributable to an activity of a taxpayer not engaged in for profit except as provided in section 183(b). Section 183(b)(1) permits a taxpayer to take the deductions that would be allowable without regard to whether the activity is carried on for profit. Section 183(b)(2) permits other deductions to be taken, but only to the extent that the gross income from such activity exceeds the deductions allowed by section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as any in which deductions would not be allowed under section 162 or under paragraph (1) or (2) of section 212. Expenses incurred in carrying on a trade or business are allowable under section 162 if they are ordinary and necessary to the conduct of that trade or business. Antonides v. Commissioner, 91 T.C. 686, 693 (1988), affd. *354 893 F.2d 656 (4th Cir. 1990). Section 212 allows deductions for expenses incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Id.
An activity will be considered as conducted for profit if the facts and circumstances indicate the taxpayer entered into the activity, or continued the activity, with the actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Antonides v. Commissioner, supra; Elliott v. Commissioner, 90 T.C. 960, 970 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). A taxpayer's mere statement of intent to make a profit is not controlling; rather, the objective facts must be examined, and greater weight will be given to these, rather than a mere statement of intent. Dreicer v. Commissioner, supra at 645; *355 sec. 1.183 -2(a) and (b), Income Tax. Regs.
Section 1.183 -2(b) of the Income Tax Regulations provides nine factors to be considered in determining whether an activity is engaged in for profit. They are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation that may be present. Petitioner stated that he expected to make a profit on the horsebreeding activity. Petitioner introduced no admissible written evidence on the issue of horsebreeding, apart from his own tax returns. Petitioner produced no canceled checks or other documents other than bills of sale and notes, which were not stipulated to be accurate. Petitioners did not have any demonstrated expertise *356 in horsebreeding, nor did they consult any experts in an attempt to make the activity more profitable. The time involved in the activity was negligible at best. It does not appear that petitioners could have had a reasonable expectation that any of the horses purchased would appreciate in value, especially in light of the unrebutted expert testimony offered by respondent that the prices paid by petitioner were grossly excessive compared to the appraised values. We conclude that petitioner's activities in horsebreeding were not shown to be entered into for profit. We find that the transactions involving the thoroughbreds appear to have been shams, and petitioner did not show that he had any honest objective of making a profit. Comakr
Respondent recharacterized income treated by petitioners as capital gains in 1981 and 1982 as ordinary income, pursuant to a closing agreement executed on September 23, 1985. Petitioners have conceded the validity of the closing agreement. Petitioners' only argument is that they have no record of any such distributions even though they themselves originally reported the distributions as capital gains. Accordingly, the income that petitioners reported *357 as capital gains in the amounts of $ 24,44=9 and $ 1,409 for the 1981 and 1982 tax years should be treated as ordinary income as determined by respondent. State Taz Refunds
Petitioners introduced no evidence as to the State tax refund received in 1982, other than their Federal tax returns for the years in question. Petitioners argue that the refund did not give rise to a Federal tax benefit. Under section 111, a taxpayer is not required to include in gross income for the year of receipt a State tax refund or portion thereof, to the extent that the deduction of the State tax for an earlier year did not give rise to a tax benefit. Hoag v. Commissioner, T.C. Memo. 1991-606. Petitioners assert that they received no tax benefit in 1981 from deducting the California State tax. After proposed additions to income, petitioners' taxable income for 1981 was $ 1,277,337. The deduction of California State tax claimed by petitioners in 1981 has not been challenged by respondent. Petitioners have failed to show that this deduction did not reduce petitioners' Federal income tax liability, thereby creating a Federal tax benefit. California apparently having *358 determined that petitioners have overpaid its income tax, petitioners received, in the form of a State tax refund, a portion of the amount which originally gave rise to the deduction. We conclude that the State tax refund of $ 4,446 received in 1982 was income in 1982. First Western Government Securities
This Court has determined that investments involving forward contracts for Government mortgaged-backed securities with First Western Government Securities lacked economic substance. Freytag v. Commissioner, 89 T.C. 849 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). In so doing, this Court disallowed any fees paid in connection with such investments. Id. Petitioner asserts that a settlement with regard to this issue for the years 1979 and 1980 had resolved the matter. There was no settlement; however, there was an order of dismissal for lack of prosecution by petitioner in another case in this Court for 1979 and 1980. That order is not controlling on the issue today because it dealt with 1979 and 1980 while today we consider 1981 and 1982 with regard to First Western *359 Government Securities. Petitioner has the burden of establishing that respondent's determination was erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner offered no testimony and introduced no evidence on this issue. We therefore find that petitioner abandoned this issue and accordingly hold that the deductions for investment fees paid to Samuels-Kramer are not allowed. Negligence
Respondent determined that petitioners are liable for additions to tax for negligence pursuant to section 6653(a) for tax years 1979 through 1980, section 6653(a)(1) and (2) for tax years 1982 through 1985, section 6653(a)(1)(A) and (B) for tax years 1986 and 1987, and section 6653(a)(1) for 1988. Section 6653(a) defines negligence so as to include "any failure to make a reasonable attempt to comply with the provisions of this title". Negligence has also been defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners had the burden to demonstrate that the additions to tax should not apply. *360 Bixby v. Commissioner, 58 T.C. 757 (1972). They presented nothing; petitioners have failed to show that the additions to tax for negligence should not apply. These additions to tax therefore will be sustained. Additions to Tax for Valuation Overstatements
Section 6659, for years prior to 1990, imposes an addition to tax of up to 30 percent of the tax underpayment where there has been an underpayment of at least $ 1,000 attributable to a valuation overstatement. A valuation overstatement occurs where the claimed value of property or its adjusted basis is 150 percent or more of the value or adjusted basis that is determined to be correct. Ferrell v. Commissioner, 90 T.C. 1154 (1988). Respondent determined such additions at the full 30-percent rate for each of the years herein except 1989. Petitioners have the burden of proving that respondent's determination is incorrect, Rule 142(a), and they have failed to do so to the extent that respondent's determination is based on an overvaluation; therefore, the determination must stand. Section 6659 applies to returns filed after December 31, 1981. Economic Recovery Tax *361 Act of 1981, Pub. L. 97-34, sec. 722(a)(4), 95 Stat. 341. If an overvaluation on a return filed after December 31, 1981, gives rise to an underpayment for a year prior to 1981 by operation of a net operating loss carryback, then the underpayment is attributable to the adjustment in the later year. Nielsen v. Commissioner, 87 T.C. 779 (1986). Petitioners filed amended returns for the taxable years 1979 and 1980 carrying back losses incurred in 1982. Accordingly, to the extent that the underpayments for 1979 and 1980 are attributable to an overvaluation on the return filed for 1982, such underpayments will be subject to the addition to tax under section 6659(a). Underpayments which are not attributable to overvaluation are not subject to the addition to tax under section 6659. Todd v. Commissioner, 89 T.C. 912 (1987), affd. 862 F.2d 540 (5th Cir. 1988); Soriano v. Commissioner, 90 T.C. 44, 60 (1988). Petitioners claimed depreciation expenses and board, care, and insurance expenses, with respect to the alleged horsebreeding activity. The deductions for depreciation *362 are arguably attributable to overvaluations of the horses. Respondent also disallowed deductions for board, care, and insurance of the horses because the activity was not engaged in for profit and the transactions had no economic substance, not due to a valuation overstatement, and the resulting deficiencies therefore are not subject to the addition under section 6659. Zirker v. Commissioner, 87 T.C. 970 (1986); Vangeloff v. Commissioner, T.C. Memo. 1992-514 (declining to apply section 6659 to lease expenses, printing expenses, appraisal expenses, and advertising expenses); McCain v. Commissioner, T.C. Memo. 1987-285 (section 6659 does not apply to disallowed deductions for advance loan commitment fees where the underlying transaction has no economic substance). Section 6659 will apply to that portion of an overstatement which is attributable to an overvaluation of an asset, but not when there is merely an improper deduction. Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), affg. T.C. Memo. 1988-416; Rasmussen v. Commissioner, T.C. Memo. 1992-212. *363 Respondent determined in her notice of deficiency that petitioners overvalued the horses by more than 500 percent, making the applicable percentage 30 percent under section 6659(b). The parties will have to make a Rule 155 computation herein. Under Todd v. Commissioner, supra, the addition to tax will be computed by comparing the tax liability without adjustment for the valuation overstatement (excluding the disallowed deductions for board, care, and insurance) to the actual tax liability with an adjustment for the valuation overstatements. See also Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408. Increased Interest Rate Due to a Tax-Motivated Transaction
Section 6621(c), as in effect for years prior to 1981, imposes an interest rate of 120 percent of the underpayment rate on any substantial underpayment attributable to a tax-motivated transaction. Section 6621(c)(2) provides that a substantial underpayment of tax is any underpayment of tax which exceeds $ 1,000 and is attributable to a tax-motivated transaction. Any valuation overstatement, as defined *364 in section 6659(c), will be regarded as a tax-motivated transaction under section 6621(c)(3)(A)(i). Respondent determined such additions for each of the years herein except 1989. Petitioners have done nothing to rebut this determination. Accordingly, respondent's determination is sustained to the extent that the underpayment was attributable to the overvaluation of assets. Decision will be entered under Rule 155.