JAMES W. PAXSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Paxson v. Commissioner
Docket No. 4506-89
United States Tax Court
T.C. Memo 1994-513; 1994 Tax Ct. Memo LEXIS 521; 68 T.C.M. (CCH) 941; October 17, 1994, Filed *521 Decision will be entered for respondent, except with respect to the addition to tax under Section 6659(a). James W. Paxson, pro se. For respondent: John Aletta. DAWSON, NAMEROFF DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE NAMEROFF, Special Trial Judge: Respondent determined a deficiency in petitioner's 1982 Federal income tax in the amount of $ 15,462, plus additions to tax under section 6653(a)(1) in the amount of $ 773, section 6653(a)(2) in the amount of 50 percent of the interest due on the entire understatement, section 6659(a) in the amount of $ 2,606, and *522 section 6661(a) in the amount of $ 1,694. Respondent further determined that petitioner is liable for an increased rate of interest attributable to tax-motivated transactions under section 6621(c) (formerly section 6621(d)). Petitioner conceded the disallowance of the deductions and credits which were attributable to his investment in two Saxon Energy Brains. Accordingly, respondent's determination of the deficiency has been conceded. The issues remaining for decision are: (1) Whether petitioner is liable for the additions to tax under section 6653(a)(1) and (2); (2) whether petitioner is liable for the addition to tax under section 6659(a); (3) whether petitioner is liable for the addition to tax under section 6661(a); and (4) whether petitioner is liable for increased interest under section 6621(c). Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioner resided in Los Angeles, California. Petitioner bears the burden of proving respondent's determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). *523 Petitioner has a bachelor's degree in economics. Since graduating college, petitioner has generally worked as an industrial and manufacturing engineer. During 1982, petitioner was employed full-time as a manufacturing engineer manager at Fafnir Bearing, a division of Textron Inc. As a manufacturing engineer manager, petitioner was responsible for purchasing equipment for his division. Petitioner learned of the Saxon Energy Brain leasing program during the preparation of his 1981 tax return through his tax adviser and preparer, Mr. John Pock (Pock). Unbeknownst to petitioner at the time, Pock was receiving a commission for each leasing transaction he arranged. Petitioner read the offering memorandum and discussed the investment with Pock. Included in the offering memorandum was a list of suitability requirements of the potential lessee, a description of the program, a description of the risk factors, a background of the lessor, a summary of tax consequences, and a 14-page tax opinion from the law firm of Falk & Berman located in New York, New York. Additionally, Pock, in a document entitled "Personal Tax Planning Analysis-James W. & Susanne C. Paxson" demonstrated the potential *524 tax savings to petitioner if he invested $ 15,243 in the Saxon Energy program. After reviewing the offering memorandum, petitioner asked the tax accounting manager at Fafnir Bearing, Al Gosline, some general questions regarding the investment tax and energy credits; however, he neither provided Mr. Gosline with the offering memorandum, nor asked him to make a judgment with respect to the viability of the Saxon Energy Brain. Additionally, Fafnir Bearing was in the process of installing an energy saving device at its plant, and petitioner requested quotations for the new installation from the Fafnir Bearing plant engineer. However, the new energy saving device was substantially different from the one petitioner was contemplating, having many more inputs and outputs. Moreover, as with Mr. Gosline, petitioner neither provided the plant engineer with the offering memorandum nor asked him to make a judgment with respect to the viability of the Saxon Energy Brain. Petitioner neither compared prices of other energy saving devices nor received a guarantee as to where the Energy Brains would be installed. Although petitioner did some financial analyses, they were based primarily upon the *525 return projections made in the offering memorandum or arbitrary assumptions made by petitioner to support the investment. Nevertheless, based on his own calculations, petitioner believed the Saxon Energy Brains were overvalued. Prior to investing in the Saxon Energy Brain, petitioner neither viewed a Saxon Energy Brain installation nor did he make an independent effort to investigate the Saxon Energy Brain. Rather, in making his investment, petitioner relied primarily on Pock's representations that the investment would render significant tax savings. The basic concept in the Saxon scheme was that an investor leased for 20 years an Energy Brain from Saxon, which would then be installed by an "energy management" company in the facility of an end user. The Energy Brain was supposed to control the heating and/or cooling mechanisms of the end user and promote energy savings. For a substantial cash payment from petitioner, designated the "first year minimum lease rental", plus a non-recourse obligation to pay the lessor 75 percent of the lessee's net revenues, the lessor agreed to pass through to the lessee the investment tax credit, based upon Saxon's alleged purchase price. In *526 theory, the lessee would be able to sublease the Energy Brain for 50 percent of the net energy savings produced by the Energy Brain, less the 15 percent paid to the management company less 75 percent to Saxon. On December 27, 1982, petitioner entered into two Agreements of Lease with Saxon Energy Corp. for leasing two energy management systems known as Energy Brain Models 001 and 002, respectively. Petitioner neither negotiated the lease price of the Energy Brains nor saw the Energy Brains he leased from the Saxon Energy Corp. Petitioner had no information about the energy management company authorized to place the brains or any information about the end users selected by the management company. On petitioner's 1982 Schedule C for his leasing activity he reported zero gross receipts for this investment and claimed deductions totaling $ 15,243, consisting of "rent on business property" of $ 10,000 and "management fees" of $ 5,243. Moreover, petitioner claimed investment tax credits in the amount of $ 32,000, based upon valuing the Energy Brain Models 001 and 002 at $ 80,000 and $ 240,000, respectively. [2] Respondent's expert witness, Xenergy, Inc., concluded in a comprehensive *527 report that the 1982 fair market values of the EB1 and EB2 were $ 795 and $ 1,295, respectively. [3]
In Schillinger v. Commissioner, T.C. Memo. 1990-640, affd. 1 F.3d 954 (9th Cir. 1993), a test case for the Saxon Energy Brain project, we concluded that the transactions in question, identical to those before us in the instant case, were completely devoid of profit motive. In so holding, we stated: The entire scheme was designed so that all parties came out ahead *528 without anyone being exposed to personal liability. * * * [Taxpayer] invested at yearend in order to obtain the hefty tax credits without regard to whether the units were actually placed in a suitable location. His objective was to earn a profit through tax savings, not through actually placing the units with an end user and earning a profit from energy savings. * * * [Schillinger v. Commissioner, T.C. Memo. 1990-640, affd. 1 F.3d 954 (9th Cir. 1993).]
Section 6653(a)
Section 6653(a)(1) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest on the portion of the underpayment attributable to negligence. "Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985), (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967). Petitioner maintains *529 that he acted prudently in making his investment in the Saxon Energy Brain and claiming the deductions and credits therefrom on his return. Petitioner's failure to make a meaningful investigation beyond the promotional materials supplied by the promoters or to consult unbiased independent advisers before making his decision was not reasonable or in keeping with the standard of the ordinarily prudent person. See LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991), affd. without published opinion 956 F.2d 274 (9th Cir. 1992); Rybak v. Commissioner, 91 T.C. 524, 565-566 (1988). Petitioner's contacts with Mr. Gosline and the plant engineer were of little use in formulating an informed opinion as to the viability of the Saxon Energy Brain concept, value, and potential profitability. Petitioner attempts to place reliance on Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408. In Heasley *530 , the Fifth Circuit Court of Appeals determined that based on the taxpayers' income level (they were of moderate income), education (neither of the taxpayers was a high school graduate), and lack of investment experience, the taxpayers had acted reasonably. However, unlike the taxpayers in Heasley, this petitioner was not an unsophisticated investor. Petitioner is a college graduate and a manufacturing engineer manager with substantial responsibility for purchasing expensive equipment. We hold that petitioner's conduct was negligent and not that of a reasonable and ordinarily prudent person. The understatement of his income tax for 1982 is a direct result of such negligence. Accordingly, we sustain respondent on this issue. Section 6659
Section 6659(a) provides for a graduated addition to tax on an underpayment of tax which is attributable to a valuation overstatement. Section 6659(c) provides that there is a valuation overstatement if the value of any property or the adjusted basis of any property claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis, as the case may be. In Todd v. Commissioner, 862 F.2d 540, 542-543 (5th Cir. 1988), *531 affg. 89 T.C. 912 (1987), the Court of Appeals for the Fifth Circuit found that: The portion of the underpayment that is attributable to a valuation overstatement will be determined after taking into account any other proper adjustments to tax liability. Thus, the underpayment resulting from a valuation overstatement will be determined by comparing the taxpayer's (1) actual tax liability (i.e., the tax liability that results from a proper valuation and which takes into account any other proper adjustments) with (2) actual tax liability as reduced by taking into account the valuation overstatement. The difference between these two amounts will be the underpayment that is attributable to the valuation overstatement. [Quoting Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 333 (J. Comm. Print 1981.)]
Thereafter, in Heasley v. Commissioner, supra, the Fifth Circuit Court of Appeals, using the formula approach, arrived at the same conclusion when all of the deductions and credit related to the tax shelter had been disallowed by respondent, and the taxpayer conceded *532 the disallowance before trial. The Court of Appeals for the Ninth Circuit, to which this case would be appealable, has adopted the Heasley formula approach. See Gainer v. Commissioner, 893 F.2d 225 (9th Cir. 1990), affg. T.C. Memo. 1988-416; Rasmussen v. Commissioner, T.C. Memo. 1992-212. In the instant case, when comparing petitioner's actual tax liability (without the improperly claimed deductions and credits) with petitioner's actual tax liability including the valuation overstatement, petitioner's tax liability would remain the same because respondent has disallowed the entire deductions and credits containing the valuation overstatement claimed by petitioner on grounds other than erroneous valuation, which we sustained. Thus, the underpayment is not attributable to a valuation overstatement. Instead, it is attributable to claiming an improper deduction or credit. In other words, petitioner's valuation overstatement does not change the amount of tax actually owed. Accordingly, we hold that the addition to tax under section 6659(a) does not apply to petitioner. Section 6661
*533 Section 6661(a) provides that a taxpayer is liable for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Petitioner bears the burden of proving that he is not liable for this addition to tax. Rule 142(a); King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 517 (1992). There is a substantial understatement of tax for a taxable year if the amount of the understatement for the taxable year exceeds the greater of 10-percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). An "understatement" is defined as the excess of the amount of the tax required to be shown on the return for the taxable year over the amount of the tax imposed which is shown on the return. Sec. 6661(b)(2)(A). However, section 6661(b)(2)(C) provides special rules regarding the reduction of the understatement for substantial authority or disclosure on the return in the case of a tax shelter. The disclosure reduction does not apply and the substantial authority reduction is only applicable if the taxpayer reasonably believed the claimed tax treatment was *534 more likely than not the proper treatment. Section 6661(c) authorizes respondent to waive any part of the addition to tax imposed under section 6661 upon a showing by the taxpayer of reasonable cause for the understatement and that the taxpayer acted in good faith. The most important factor in determining whether to grant a waiver is "the extent of the taxpayer's effort to assess the taxpayer's proper tax liability under the law." See Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988); sec. 1.6661-6(b), Income Tax Regs. Reliance upon the advice of a professional will not constitute a showing of reasonable cause and good faith unless, under all circumstances, such reliance was reasonable in light of the taxpayer's experience, knowledge, and education. Sec. 1.6661-6(b), Income Tax Regs.
As discussed above with respect to the additions to tax for negligence, petitioner's efforts to assess his proper tax liability generally consisted of his reliance upon the promotional materials. We therefore on this record conclude that no reduction of the understatement is available and that respondent did not abuse her discretion in declining to waive the addition *535 to tax under section 6661. Accordingly, we sustain respondent's determination on this issue. Section 6621(c)
Section 6621(c) provides for an increased rate of interest with respect to any "substantial underpayment" (greater than $ 1,000) in any taxable year "attributable to one or more tax motivated transactions". The increased rate of interest applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to the enactment of the statute. Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986). The term "tax motivated transaction" includes "any sham or fraudulent transaction." Sec. 6621(c)(3)(A)(v). The statutory language encompasses transactions which lack profit objective and which are without economic substance. Cherin v. Commissioner, 89 T.C. 986, 1000 (1987); see Patin v. Commissioner, 88 T.C. 1086 (1987), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), *536 affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. sub nom. Gomberg v. Commissioner, 868 F.2d 865 (6th Cir. 1989). Petitioner has conceded the entire deficiency which is attributable to his investment in the Saxon Energy Brain. In Schillinger v. Commissioner, T.C. Memo. 1990-640, affd. 1 F.3d 954 (9th Cir. 1993), we held that the transaction lacked a profit objective. Petitioner has not provided any evidence that the underpayment arising from this concession was not attributable to a tax-motivated transaction. Accordingly, the increased rate of interest applies to the underpayment attributable to all deductions taken with respect to the Saxon Energy Brain. To reflect the foregoing, Decision will be entered for respondent, except with respect to the addition to tax under section 6659(a). Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Only $ 8,688 of the investment tax credit was required to reduce petitioner's tax liability for 1982 to zero. Although not stated in the record, we presume the unused credit was either carried back to prior years or carried forward to subsequent years. The fate of those other years is not set forth in this record nor have we jurisdiction with regard thereto.↩
3. We conclude that the terms EB1 and EB2 used by Xenergy, Inc. refer to the Energy Brain Models 001 and 002 leased by petitioner.↩